IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(HARRISONBURG DIVISION)

**FREEDOM WATCH, INC.**

    **Plaintiff,**                                                           Case No.: 17-cv-00104-EKD

v.

**RESPONSE UNLIMITED, INC., PHILLIP
ZODHIATES, AND JOEL BAUGHER,**

    **Defendants.**

## BRIEF IN SUPPORT OF MOTION TO DISQUALIFY
## LARRY KLAYMAN AS PLAINTIFF'S COUNSEL

COME NOW Defendants Response Unlimited, Inc., Phillip Zodhiates, and Joel Baugher, by counsel, and offer this Brief In Support of the Motion To Disqualify Larry Klayman As Plaintiff's Counsel, and state in support of the Motion as follows:

Defendants respectfully submit that any representation by Larry Klayman of Plaintiff Freedom Watch, Inc. directly violates the following provisions of the Virginia Rules of Professional Conduct set forth in Part 6, § II of the Rules of the Supreme Court of Virginia (the "R.P.C."):

    1.    Rule 3.7(a), which prohibits a lawyer from acting as an advocate in adversarial proceedings in which the lawyer is likely to be a necessary witness;

    2.    Rule 3.7(b), which prohibits a lawyer from continuing to represent a client in contemplated or pending litigation if the lawyer learns that he may be called as a witness by another party and it is apparent that his testimony is or may be prejudicial to his client; and

1

3. Rule 1.7(b), which prohibits a lawyer from representing a client if such representation will be directly adverse to, or materially limited by the lawyer's own interests.

**STATEMENT OF ISSUES**

This suit arises out of the parties' negotiation, execution, and performance of an Agreement between Plaintiff Freedom Watch, Inc. ("Freedom Watch") and Defendant Response Unlimited, Inc. ("Response Unlimited") *"to perform fundraising services, including but not limited to direct mailing services."* (Complaint, Introduction).

The parties dispute whether these services were performed pursuant to a long-standing List Brokerage Agreement dated June 26, 2007 (attached as Exhibit A to Defendants' Motion To Dismiss), as alleged by Defendants; or was pursuant to a separate "oral agreement" or "understanding," or "course of dealing," as alleged by Plaintiff.

In either case, Plaintiff basically alleges that Defendant Response Unlimited charged for direct mailing services it either didn't perform, or performed incompletely; and that Defendant Response Unlimited used Plaintiff's mailing lists in ways not authorized by Plaintiff.

Plaintiff also alleges that Defendant Phillip Zodhiates - - owner of Defendant Response Unlimited - - - and Defendants Joel Baugher - - - a former employee of Defendant Response Unlimited - - - somehow aided and abetted Defendant Response Unlimited in these alleged actions. Defendants deny these allegations.

As explained below, Larry Klayman is going to be an essential witness, perhaps the principal witness, on behalf of the Plaintiff Freedom Watch, Inc. in this case, and his credibility will be a central issue in the case. Larry Klayman is thus prohibited under the Virginia

2

Rules of Professional Conduct from acting as counsel for Plaintiff Freedom Watch, Inc. in this case.

## ARGUMENT

I.  THE RULES OF PROFESSIONAL CONDUCT EXIST TO PROTECT THE INTEGRITY OF THE LEGAL SYSTEM.

The guiding principle in considering motions to disqualify counsel for a violation, or potential violation, of the R.P.C. is to safeguard the integrity of the court proceedings, and a motion should be granted when it is necessary to eliminate the threat that the litigation will be tainted. Stokes v. Firestone, 126 B.R. 181, 185 (Bankr. E.D.Va. 1993) (citing United States Football League v. National Football League, 605 F.Supp 1463, 1465 (S.D.N.Y. 1985)). The trial court must, of course, recognize a party's right to be represented by counsel of its choosing, but this right is less compelling in a civil case. Rogers v. The Pittson Company, 800 F.Supp. 350, 353 (W.D.Va. 1992). Disqualification cannot be based on "imagined scenarios of conflict," but, in the interest of preventing the "appearance of impropriety," the trial court must resolve all doubts in favor of disqualification. Id. at 353 (citing United States v. Clarkson, 567 F.2d 270, 273 (4th Cir. 1977)).

II. LARRY KLAYMAN IS LIKELY TO BE A NECESSARY WITNESS IN THIS SUIT, AND THEREFORE, HE CANNOT ACT AS AN ADVOCATE FOR FREEDOM WATCH.

  A.  Rule 3.7(a) of the R.P.C. Prohibits Larry Klayman From Acting As An Advocate In This Suit.

Rule 3.7(a) of the R.P.C. prohibits a lawyer from acting as an advocate in adversarial proceedings in which the lawyer is likely to be a necessary witness, except where (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of

3

the legal services rendered in this case; or (3) disqualification of the lawyer would work substantial hardship on the client.

This "witness-advocate" rule derives from the fundamental fact that the roles of advocate and witness are inconsistent, it being the function of the advocate to argue the cause of another and the role of a witness to state facts objectively. In recognition of this fundamental difference in the roles of witness and advocate, the rule "serves as a prophylactic rule designed to protect the interests of the client, the adverse party, and the institutional integrity of the legal system as a whole." Personalized Mass Media Corp. v. The Weather Channel, Inc., 899 F. Supp. 239, 242 (E.D. Va. 1995).

In the Plaintiff's Initial Disclosures, served on Defendants on Saturday, January 6, 2018, Plaintiff identifies Larry Klayman as the only witness associated with, or in the employ of, Plaintiff Freedom Watch. All other witnesses identified by Plaintiff are employees or associated with Defendant Response Unlimited. **(Exhibit 1).**

It thus appears that Larry Klayman may not only be a witness for Plaintiff, he may be the only witness for Plaintiff.

This makes sense, because Larry Klayman is the founder of Plaintiff Freedom Watch (See, "About Larry Klayman" from Freedom Watch's website, https://www.freedomwatchusa.org/klayman **(Exhibit 2)**, and is the person on behalf of the Plaintiff who had the most direct contact with Defendants about the performance of the contracts in question in this lawsuit. Indeed, at the Initial Pretrial Conference in this case conducted by telephonic conference on Tuesday, January 2, 2018, Larry Klayman stated to the Court that he

would be best in a position to summarize the background of the case, *"Because I have been living it for years."*

Plaintiff has engaged Virginia counsel in the matter, so disqualifying Larry Klayman's ability to act as legal counsel in this case will not prejudice the Plaintiff.

Nor would this appear to be an appropriate case in which to "stretch a point," in favor of allowing Larry Klayman to appear *pro haec vice*, notwithstanding that his acting as counsel for Plaintiff would violate Virginia's Rules of Professional Conduct. To the contrary, multiple federal courts around the country have either refused to allow Larry Klayman to appear *pro haec vice* or, having initially allowed him to so appear, have sanctioned him for misconduct. A recitation of such past decisions by other federal courts is set forth in In re Bundy, 840 F. 3d 1034, 1046 (9th Cir. 2016):

> *Attorney Larry Klayman applied to be admitted pro hac vice in the high-profile criminal trial of Cliven Bundy. The district court denied his application without prejudice. Bundy has now asked this court for a writ of mandamus to force the district court to admit Klayman. We decline to do so. Under our decisions, the district court had more than ample cause to turn down Klayman's application: he is involved in an ethics proceeding before the District of Columbia Bar, and he was not candid with the court about the status of those proceedings; he disclosed that he was twice barred in perpetuity from appearing pro hac vice before judges in the Central District of California and the Southern District of New York, but he failed to list numerous cases – all available on WestLaw or LEXIS – in which he has been reprimanded, denied pro hac vice status, or otherwise sanctioned for violating various local rules; and he has a record of going after judges personally, and shortly after Chief Judge Gloria Navarro denied his application, Bundy filed a frivolous Bivens action against her in her own court. This litany of reasons for denying Klayman pro hac vice status demonstrates that the district court did not abuse its discretion, much less commit clear error.*
>
> . . . . .
>
> *The district court not only defended the grounds on which it had issued its prior orders, it offered new evidence and grounds for refusing to grant Klayman pro hac vice status. First, the district court reiterated that the still-pending disciplinary proceedings in the*

> *District of Columbia raised ethical concerns. The court then challenged the veracity of how Klayman described the current status of the proceedings. Rather than "withdraw[ing] his affidavit because he felt strongly that he had acted ethically," as Klayman claimed, the district court unearthed evidence that:*
>
>> . . . the District of Columbia Hearing Committee reviewed Klayman's Petition for Negotiated Discipline and rejected it. The Hearing Committee rejected Klayman's affidavit because it determined that the "agreed-upon sanction of public censure is unduly lenient." As such, Klayman failed to disclose the actual current disposition of his pending District of Columbia disciplinary case, and instead provided false information to this Court by stating that he withdrew his affidavit when, in fact, the Hearing Committee rejected it.
>
> *Second, the district court also felt that Klayman had filed an incomplete and inaccurate Verified Petition because he had failed to mention "numerous other courts' findings that he is unfit to practice," and the court cited eight cases in which courts had commented on his "inappropriate and unethical behavior." Third, the district court pointed to a Second Circuit decision in which that court dismissed his challenge to the district court's impartiality because it was "insulting and smacked of intimidation." MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 138 F.3d 33, 38 (2d Cir. 1998). The district court then observed that Bundy recently filed a "similar[]" civil suit against the district judge individually, President Obama, and Senator Harry Reid, alleging a conspiracy. See Bundy v. Obama, No. 2:16-cv-1047-JCM-GWF (D. Nev. Dismissed with prejudice October 12, 2016). The district court thus argued that it did not abuse its discretion because Klayman's record shows a "total disregard for the judicial process" and his admission pro hac vice would thus "impede the orderly administration of justice."*

In re Bundy, 840 F. 3d 1034, 1046 (9th Cir. 2016).

        Defendants note that while Plaintiff's Motion For Leave For Larry Klayman To Appear Pro Haec Vice in this case filed on January 4, 2007 (Docket # 47), stated that "Mr. Klayman's Verified Application To Appear Pro Haec Vice is attached hereto as Exhibit A," in fact no such Verified Application by Larry Klayman was attached. Had Mr. Klayman's Verified Application To Appear Pro Haec Vice been attached, of course, it would have had to disclose these matters described in In re Bundy, 840 F. 3d 1034, 1046 (9th Cir. 2016).

(Compare the Verified Application attached as Exhibit A to Defendant's Motion For Cory Mauro To Appear Pro Haec Vice (Exhibit A to Docket #40), which included the usual form Application To Appear Pro Haec Vice Before A Virginia Tribunal).

If, as Plaintiff alleges, the contractual relationship between the parties which gives rise to Plaintiff's claims was not the subject of the List Brokerage Agreement dated June 26, 2007 but rather was pursuant to a separate "oral agreement" or "understanding," or "course of dealing," and Plaintiff's case is based on Plaintiff's claim that Defendant's conduct of that relationship was not in accordance with Plaintiff's "understanding" or their prior "course of dealing," then this case is a quintessentially "*He said, She said*," type of case, with the principal factual issues in the case being Plaintiff's and Defendants' representatives' competing versions and recollections of what the parties said to each other and agreed to do.

As noted above, Larry Klayman is the only witness Plaintiff has identified who is associated with, or employed by, Plaintiff, with knowledge of this case. He is thus not just a "necessary" witness, he is Plaintiff's *sine qua non* witness - - - without Larry Klayman's testimony, it would appear that Plaintiff has no case at all.

The credibility of Larry Klayman will thus be squarely before the court and the jury, making it impossible for him to, at the same time, conduct the case as counsel for Plaintiff Freedom Watch, Inc. without being in violation of the Virginia Rules of Professional Conduct.

(i) <u>Larry Klayman Is Likely to Be A Necessary Witness For The Other Defendants</u>.

Insofar as Defendants attempt to refute the allegation that they made certain representations, or that they made such representations knowing that they were false, Larry

7

Klayman's testimony will be crucial and vital evidence. Accordingly, it is highly likely that Larry Klayman will be called to testify on behalf of Freedom Watch at trial.

None of the exceptions set forth in Rule 3.7(a) applies because Larry Klayman's testimony will be highly germane to what is likely to be the most hotly contested issues in this case. His testimony would not relate to relate to the nature and value of any legal services he has rendered in this case. Freedom Watch would not suffer substantial hardship by Larry Klayman's disqualification at this time. This suit is in its infancy, and, therefore, Freedom Watch will suffer no prejudice by retaining new counsel at this stage.

B. <u>Larry Klayman Must Also Be Disqualified Under Rule 3.7(b).</u>

Insofar as Freedom Watch may claim that it does not intend to call Larry Klayman as a witness on their behalf, he must still be disqualified as their counsel if he may be called by Defendants as an adverse witness. Rule 3.7(b) states, "*If after undertaking employment in contemplated or pending litigation, a lawyer learns or it obvious that the lawyer may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client.*" To prevent abuse, however, the moving party must show that the testimony of the lawyer is (1) relevant; (2) necessary; and (3) may be prejudicial to the client whose lawyer is to be called as a witness by the adverse party. <u>Personalized Mass Media Corp. v. The Weather Channel, Inc.</u>, 899 F. Supp. 243 (citing Legal Ethics Opinion 1394, February 15, 1991).

Defendants may likely, and are entitled to, call Larry Klayman as an adverse witness to attempt to prove: (1) that the matters described in the Complaint are the subject of the List Brokerage Agreement dated June 26, 2007; (2) that Defendant Response Unlimited's use of

8

Plaintiff's mailing lists was consistent with the agreements between the parties; and (3) that Defendant Response Unlimited performed in accordance with the agreements of the parties. Accordingly, Larry Klayman's testimony as an adverse witness in this suit is both relevant and necessary.

      C.     <u>The Court Must, Of Course, Satisfy Itself That This Motion Is Not Just A "Tactical" Maneuver</u>

In ruling on Defendants' motion to disqualify Larry Klayman, the Court must be sensitive to the concern that motions to disqualify counsel can be easily abused to simply prejudice a litigant by depriving the litigant of its right to be represented by counsel of its choice. Such concern correctly heeds the warnings issued by numerous state and federal courts in Virginia that motions to disqualify must be scrutinized in light of the "possibility of a disqualification motion being misused for the obvious tactical advantages." <u>In re Chantilly Construction Corp.</u>, 39 B.R. 466, 468 (Bankr. E.D. Va. 1984); <u>see also</u> <u>Kirk v. Slocum</u>, 38 Va. Cir. 85, 86 (Fairfax 1995) ("The standard of proof is high in such cases, given the inherent possibilities of abuse of such motions"); <u>Shaffer v. Farm Fresh, Inc.</u>, 966 F.2d 142, 146 (4th Cir. 1992) ("[Courts must] always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reason.").

Rule 3.7(a) of the Virginia Rules of Professional Conduct ("R.P.C.") requires the Court to consider whether Larry Klayman is likely to be a "necessary" witness for Plaintiff Freedom Watch, Inc. As explained above, it is inevitable that Larry Klayman will have to be called as a witness by either or both Plaintiff and Defendants.

Defendants are asking the Court to address this issue now, at the inception of the case, rather than "sandbag" the Court, the Plaintiff, and Mr. Klayman, by waiting and objecting at a later time in this case, after Mr. Klayman has become more deeply involved as counsel in this proceeding, and rather than later objecting to Mr. Klayman's appearing as a witness at Trial. Defendant's just received the Initial Disclosures on Saturday, January 6, 2018, and thereafter filed their Motion To Disqualify as quickly as possible in order to avoid any such claim of estoppel.

To prevent clear abuses of this rule that are motivated by a desire to gain a tactical advantage, the moving party must show that the testimony of the lawyer in question is (1) relevant; (2) necessary; and (3) may be prejudicial to the client whose lawyer is to be called as a witness by the adverse party. <u>Personalized Mass Media Corp. v. The Weather Channel, Inc.</u>, 899 F. Supp. 243 (citing Virginia Legal Ethics Opinion 1394, February 15, 1991). This case presents a clear situation where all three factors are present.

Freedom Watch has specifically identified Larry Klayman as its only witness on its behalf in its Initial Disclosures filed under Federal Rule 26. Moreover, in its Complaint, Freedom Watch repeatedly alleges that its claims are based on a "course of dealing" between Freedom Watch and Response Unlimited.

Based upon Freedom Watch's own Initial Disclosures, Freedom Watch has no other witnesses <u>other</u> than Larry Klayman which it can call in support of its factual allegations. As such, Larry Klayman is the quintessential "necessary witness" for Plaintiff Freedom Watch.

Accordingly, Larry Klayman's involvement in the case invokes the specific requirements of Rule 3.7(b) of the R.P.C. Rule 3.7(b) states:

> *If after undertaking employment in contemplated or pending litigation, a lawyer learns or it obvious that the lawyer may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client.*

Rule 3.7(b); Rules of Professional Conduct.

## CONCLUSION

WHEREFORE, Defendants move to disqualify Larry Klayman from acting as counsel for Plaintiff Freedom Watch, Inc. in this case, and move the Court to deny Larry Klayman's Motion To Appear Pro Haec Vice in this case.

Respectfully submitted this 8th day of January, 2018.

                                                   RESPONSE UNLIMITED, INC., PHILLIP
                                                   ZODHIATES and JOEL BAUGHER
                                                   By Counsel

C. Cory Mauro, Esquire (Florida Bar No. 384739)
of Mauro Law
1900 Glades Road, Ste 270
Boca Raton, FL 33431
(561) 202-1992
*cory.mauro@maurolawfirm.com*
*Counsel for Response Unlimited, Inc.,*
*Phillip Zodhiates and Joel Baugher*

*/s/ William E. Shmidheiser, III*
William E. Shmidheiser, III (VSB 19047)
of Lenhart Pettit
90 N. Main Street, Ste. 201
Harrisonburg, VA 22802
(540) 437-3137
(540) 437-3101 FAX
wes@lplaw.com
*Local counsel for Response Unlimited, Inc.,*
*Phillip Zodhiates and Joel Baugher*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 8th day of January, 2018, via the electronic notices generated by the CM/ECF system upon counsel for Plaintiff, Jonathan Alden Moseley, Esq. Moseley Legal Associations, LP, contact@jonmoseley.com, and Larry Elliot Klayman, Esq., Klayman Law Firm, leklayman@yahoo.com.

_____
Local counsel for Response Unlimited, Inc.,
Phillip Zodhiates and Joel Baugher

19520 / 2 / 656918.doc